UNITED STATES BANKRUPTCY COURT

DISTRICT OF IDAHO

| | |
|---|---|
| IN RE:<br><br>HMH CONSTRUCTION, LLC,<br><br>    Debtor. | Case No. 23-00191-NGH |
| TIMOTHY R. KURTZ<br><br>    Plaintiff,<br><br>v.<br><br>KALAMATA CAPITAL GROUP, LLC,<br><br>    Defendant. | Adv. No. 25-06027-NGH |

## MEMORANDUM OF DECISION

Timothy Kurtz, the chapter 7 trustee ("Trustee"), initiated this adversary proceeding against Kalamata Capital Group, LLC ("Kalamata"), in April of 2025. Doc. No. 1 (the "Complaint"). Kalamata filed a motion to dismiss the Complaint pursuant to Civil Rule 12(b)(6)[1] for failure to state a claim upon which relief may be granted (the "Motion"). Doc. No. 19. Kalamata filed a brief in support and a declaration. Doc. Nos.

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9038, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

MEMORANDUM OF DECISION - 1

20 & 21.  Trustee filed a response.  Doc. No. 24.  The Court held a hearing on the Motion on December 8, 2025, and took the matter under advisement.  After considering the record, arguments, and applicable law, the following constitutes the Court's findings, conclusions, and disposition of the issues.

## BACKGROUND

In 2019, Kalamata and HMH Construction, LLC, the debtor in this case, entered into a "Revenue Purchase Agreement" for the purchase and sale of HMH's future receivables (the "Agreement").  Under the Agreement, HMH agreed to sell $158,500 of its accounts receivable to Kalamata in exchange for $120,000.  The Agreement authorized Kalamata to withdraw 15% of HMH's revenue weekly, which resulted in a weekly remittance of $5,658.  According to the Agreement, this amount was a good faith estimate of the purchased percentage based on HMH's revenues.  Section 1.4 allowed HMH to request a retroactive reconciliation, whereby Kalamata would debit or credit the difference "so that the total amount debited by [Kalamata] shall equal the Specific Percentage of the Future Receipts that [HMH] Collected from the date of this Agreement up to and including the date of the Reconciliation request."  If applicable, such reconciliation "shall be performed" by Kalamata within five business days following the request.  Additionally, section 1.5 provided that "should [HMH] experience a decrease in its Future Receipts, [HMH] may give notice to [Kalamata] to request a decrease in the Remittance," which remittance "shall be modified to more closely reflect [HMH's] actual receipts."

MEMORANDUM OF DECISION - 2

As part of the Agreement, HMH granted Kalamata a security interest in its accounts receivable effective immediately and a security interest in other collateral effective upon default. Performance of the Agreement was guaranteed by HMH's principal, who could be held jointly and severally liable for all amounts owed to Kalamata in the event of HMH's default. If one of the enumerated "Events of Default" occurred, the full uncollected purchased amount would become due and owing immediately and Kalamata could enforce its security interest in the collateral and against the guarantor.

The parties performed under the Agreement without incident. Kalamata transferred $120,000 to HMH and between August 2019 and February 2020, Kalamata collected the weekly remittance from HMH's accounts receivable until it collected the full purchased amount of $158,400. Three years later in April 2023, HMH filed its bankruptcy petition, and two years later, Trustee initiated this adversary proceeding.

Count I of the Complaint seeks declaratory relief that the Agreement is void ab initio under New York law. Count II seeks to avoid the transfers to Kalamata pursuant to § 544 and Idaho Code sections 55-913 and 55-914. Finally, to the extent Kalamata "holds or will file an otherwise valid and enforceable claim," Count III seeks disallowance of said claim pursuant to § 502(d) unless and until Kalamata complies with the requirements therein. Kalamata asserts the Complaint fails to state a claim upon which relief may be granted.

MEMORANDUM OF DECISION - 3

## ANALYSIS

### A. Rule 12(b)(6) Standard

Two seminal Supreme Court cases guide the Court's analysis of motions to dismiss under Civil Rule 12(b)(6)—*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). *Twombly* held that to survive a motion to dismiss under 12(b)(6), a complaint must sufficiently allege facts "to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." 550 U.S. at 556. In *Iqbal*, the Supreme Court elaborated:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

556 U.S. at 678 (internal quotation marks and citations omitted).

In *Hillen v. Specialized Loan Servicing, LLC (In re Leatham)* this Court summarized the standard for dismissal under Civil Rule 12(b)(6) as follows:

> In determining whether a plaintiff has advanced potentially viable claims, the complaint is to be construed in a light most favorable to the plaintiff and its allegations taken as true. When reviewing the allegations of a complaint, legal conclusions, deductions or opinions couched as factual allegations are not given a presumption of truthfulness. The complaint should not be dismissed for a failure to state a claim unless it appears that the plaintiff can prove no set of facts in support of the claim which would entitle plaintiff to relief.

MEMORANDUM OF DECISION - 4

> Thus, a court may properly grant a Rule 12(b)(6) motion if it is clear from the face of the complaint and judicially-noticed documents that the plaintiff cannot prevail as a matter of law.
>
> . . . [T]he issue is not whether a plaintiff will ultimately prevail but whether he is entitled to offer evidence in support of the claims. It may appear on the face of the pleadings that recovery is very remote and unlikely, but that is not the test. The key is whether or not it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

2017 WL 3704512, at *1 (Bankr. D. Idaho Aug. 24, 2017).

Dismissal under Civil Rule 12(b)(6) may "be based on either the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory." *Tracht Gut, LLC v. Los Angeles Cnty. Treasurer & Tax Collector (In re Tracht Gut, LLC)*, 836 F.3d 1146, 1151 (9th Cir. 2016). If there is merit to a 12(b)(6) motion, Ninth Circuit authority restricts a court's ability to dismiss a case and instead requires the court to provide a complainant leave to amend the complaint "unless it is clear that the complaint could not be saved by any amendment." *Harris v. Amgen, Inc.*, 573 F.3d 728, 736 (9th Cir. 2009) (internal quotation marks omitted).

  **B.**  **Claims for Relief**

    **1.**  **Count I:  Declaratory Relief**

As noted, Trustee seeks declaratory relief that the Agreement is void ab initio under New York's usury statute. The Agreement contains a New York choice-of-law provision, which the parties do not dispute. Under New York General Obligation Law § 5-512, a corporation may not assert a defense of usury in any action except "criminal usury as described in section 190.40 of the penal law." The Complaint alleges that

MEMORANDUM OF DECISION - 5

although the Agreement does not carry an interest rate on its face, its terms effectively result in an interest rate that exceeds the criminal usury rate of 25%. And, as such, the Agreement is void ab initio. Kalamata argues dismissal is appropriate because Trustee cannot bring an affirmative claim for relief under New York's usury statute and, even if Trustee were able to bring such a claim, usury does not apply because the Agreement represents a sale, not a loan.

### a. Existence of a Loan

Before a court can assess whether a contract is usurious, there must be a "loan or forbearance of money and where there is no loan there can be no usury." *Guttman v. EBF Holdings, LLC (In re Glob. Energy Sevrs., LLC)*, 2025 WL 1012721, at *3 (Bankr. D. Md. Mar. 31, 2025) (quoting *IBIS Cap. Grp., LLC v. Four Paws Orlando LLC*, 2017 WL 1065071, at *1 (N.Y. Sup. Ct. Mar. 10, 2017)). *See Streamlined Consultants, Inc. v. EBF Holdings LLC*, 2022 WL 4368114, at *4 (S.D.N.Y. Sept. 20, 2022) (noting "rudimentary element of usury is existence of loan or forbearance") (citing *Colonial Funding Network, Inc. v. Epazz, Inc.*, 252 F. Supp. 3d 274, 280 (S.D.N.Y. 2017)). "When determining whether a transaction is a usurious loan it must be considered in its totality and judged by its real character, rather than by the name, color, or form which the parties have seen fit to give it." *Streamlined Consultants, Inc.*, 2022 WL 4368114, at *4 (citation omitted). The key consideration is the transfer of risk, with the hallmark being that an alleged lender is "absolutely entitled to repayment under all circumstances." *Id.* (quoting *Principis Cap., LLC v. I Do, Inc.*, 160 N.Y.S.3d 325, 326-27 (N.Y. App. Div. 2022)). Unless repayment is absolute, the transaction is not a loan. *Id.*

MEMORANDUM OF DECISION - 6

Three factors generally inform whether repayment is absolute or contingent, namely: "(1) whether there is a reconciliation provision in the agreement; (2) whether the agreement has a finite term; and (3) whether there is any recourse should the merchant declare bankruptcy." *Fleetwood Servs., LLC v. Ram Cap. Funding, LLC*, 2022 WL 1997207, at *9 (S.D.N.Y. June 6, 2022) (quoting *LG Funding, LLC v. United Senior Props. of Olathe, LLC*, 122 N.Y.S.3d 309, 312 (N.Y. App. Div. 2020)). *See also Guttman v. EBF Holdings, LLC (In re Glob. Energy Sevrs., LLC)*, 2025 WL 1012721, at *4 (Bankr. D. Md. Mar. 31, 2025) (discussing role of factors in assessing absolute repayment noting "by an overwhelming majority, courts apply the *LG Funding* non-exhaustive three-factor test" to cases involving merchant cash advance agreements). These factors serve as a guide and do not "dictate the conclusion, and a court need not find the presence of all three factors in concluding that a transaction is a loan." *Fleetwood Servs., LLC*, 2022 WL 1997207, at *9 (collecting cases). Additionally, the factors are non-exhaustive and other factors may bear on the true nature of a transaction.

### i.   Presence of Reconciliation Provision

"A reconciliation provision is relevant because it can shift the risk of nonpayment away from the merchant by 'allow[ing] the merchant to seek an adjustment of the amounts being taken out of its account based on its cash flow (or lack thereof).'" *Fleetwood Servs., LLC*, 2022 WL 1997207, at *9 (citing *K9 Bytes, Inc. v. Arch Cap. Funding, LLC*, 57 N.Y.S.3d 625, 632 (N.Y. Sup. Ct. 2017)) (alteration in original). However, the mere presence of a reconciliation provision is not dispositive. Reconciliation that is illusory or effectively impracticable weighs in favor of the

MEMORANDUM OF DECISION - 7

transaction being a loan. For example, reconciliation may be illusory if the sum to be withdrawn is not a percentage but a specific amount regardless of whether any accounts receivables are collected, and reconciliation or adjustment of the amount to be withdrawn is left to the sole discretion of the alleged purchaser. *Id.* at *10 (citing *Am. Water Restoration, Inc. v. AKF Inc.*, 157 N.Y.S.3d 919 (N.Y. Sup. Ct. 2002)). *See also US Info. Grp. LLC v. EBF Holdings, LLC*, 2023 WL 6198803, at *7 (S.D.N.Y. Sept. 22, 2023) (collecting cases in which reconciliation was unduly onerous or had a "sham quality"). "By contrast, an enforceable reconciliation provision, pursuant to which payment is to be adjusted according to the seller's actual receipts, is generally inconsistent with classification as a loan subject to the usury laws." *Id.* at *8.

Here, the Agreement contained a reconciliation provision and an avenue by which HMH could reduce the remittance amount to reflect its actual receipts. Unlike the provision in *Fleetwood Services*, reconciliation and remittance adjustments are mandatory upon HMH's request and not left to Kalamata's discretion. In other words, the Agreement's reconciliation and remittance provisions state that Kalamata "shall" reconcile or adjust the remittance. Nonetheless, Trustee alleges that reconciliation is illusory because Kalamata withdrew remittances without regard to HMH's actual receipts and at times when HMH had no receipts, and section 1.4 does not require Kalamata to modify the weekly remittance to reflect HMH's actual receipts. However, the remittance adjustment provision in section 1.5 allows for modification of the weekly withdrawal, and Trustee does not allege these provisions did not function as agreed. *See Streamlined Consultants, Inc. v. EBF Holdings LLC*, 2022 WL 4368114, at *4 (S.D.N.Y. Sept. 20,

MEMORANDUM OF DECISION - 8

2022) (noting merchant did not allege reconciliation did not function as agreed "or, indeed, that [merchant] ever even requested reconciliation").

Trustee also alleges HMH had committed events constituting default at the time it executed the Agreement and Kalamata could therefore have invoked its rights against HMH and the guarantor at any time. The Court observes that reconciliation and remittance adjustment are available to HMH only so "long as an Event of Default, or breach of this Agreement, has not occurred." Trustee cites section 2.10 of the Agreement as one example of default. Under section 2.10, HMH represented, warranted, and covenanted that, "as of the date and during the term of this Agreement":

> [HMH] has good, complete, unencumbered and marketable title to all Receipts, free and clear of any and all liabilities, liens, claims, changes, restrictions, conditions, options, rights, mortgages, security interests, equities, pledges and encumbrances of any kind or nature whatsoever or any other rights or interests that may be inconsistent with the transactions contemplated with, or adverse to the interests of [Kalamata].

Section 3.1 outlines events constituting default, including a "violation of any term of covenant of the Agreement" and "[a]ny representation or warranty by [HMH] in this Agreement shall prove to have been incorrect, false or misleading in any material respect when made." The Complaint alleges other entities filed financing statements with the Idaho Secretary of State against HMH and certain assets of HMH prior to the execution of the Agreement. And "[w]hen Kalamata provided the funds . . . it was either aware of, or could have readily ascertained, the existence of multiple liens, including the previous lien rights of other creditors, that were outstanding at the time and superior to Kalamata's alleged lien claim." *See* Doc. No. 1 ¶ 14. Kalamata's failure to exercise its rights in the

MEMORANDUM OF DECISION - 9

face of HMH's default does not constitute a waiver and section 4.1 would require any waiver to be in writing. *Id*. ¶ 46. Therefore, despite appearing enforceable and mandatory, HMH may have been prevented from utilizing the reconciliation and remittance adjustment provisions as written.

### ii.     Indefinite or Finite Term

The second factor is whether the transaction contains a finite term by which the alleged seller must transmit the purchased receivables to the buyer, which would suggest the transaction was not a true sale but a loan. "This factor goes hand-in-glove with the reconciliation provision factor." *Guttman v. EBF Holdings, LLC (In re Glob. Energy Servs., LLC)*, 2025 WL 1012721, at *5 (Bankr. D. Md. Mar. 31, 2025). If the amount due is subject to change via reconciliation or adjusted remittances, the "term of the agreement is necessarily not finite." *Fleetwood Servs., LLC*, 2022 WL 1997207, at *9 (citing *Principis Cap., LLC v. I Do, Inc.*, 160 N.Y.S.3d 325, 327 (N.Y. App. Div. 2022)). Here, the Agreement provides there is no "payment schedule and no time period during which the Purchased Amount must be collected by [Kalamata]." And in theory, had HMH requested an adjustment to the remittance or reconciliation, Kalamata's collection would have varied according to HMH's receipts, thereby potentially extending the term of the Agreement indefinitely. Nonetheless, Trustee alleges the Agreement carried a de facto term for repayment that was fixed by the weekly remittance amount because there was no true right to reconciliation.

MEMORANDUM OF DECISION - 10

### iii. Recourse in the Event of Bankruptcy

The third factor considers whether Kalamata had any recourse in the event HMH filed a bankruptcy petition. "In determining whether the merchant retains the risk of nonpayment, it is significant that 'the agreement provides that [defendant's] written admission of its inability to pay its debt or its bankruptcy constitute events of default under the agreement, which entitle the plaintiff to the immediate full repayment of any of the unpaid purchased amount.'" *Fleetwood Servs., LLC*, 2022 WL 1997207, at *9 (quoting *LG Funding, LLC v. United Senior Props. of Olathe, LLC*, 122 N.Y.S.3d 309, 313 (N.Y. App. Div. 2020)). Recourse in the event of bankruptcy suggests the seller's obligation to the purchaser is "absolute and not contingent on its actual accounts receivable," and is thus a loan. *Id.*

The Agreement does not list filing a bankruptcy petition as an event of default. Additionally, the Agreement provides: "[HMH] going bankrupt or going out of business, or experiencing a slowdown in business, or a delay in collecting its receivables, in and of itself, does not constitute a breach of this Agreement." Courts considering similar terms have determined they weigh in favor of finding the risk lies with the purchaser, not the seller, and the contract is truly a sale. *See Guttman v. EBF Holdings, LLC (In re Glob. Energy Servs., LLC)*, 2025 WL 1012721, at *6 (Bankr. D. Md. Mar. 31, 2025) and *Streamlined Consultants, Inc. v. EBF Holdings LLC*, 2022 WL 4368114, at *5 (S.D.N.Y. Sept. 20, 2022). However, in the event of HMH's default, the uncollected purchased amount plus fees would become due and payable immediately and Kalamata could enforce its rights under the Agreement against HMH and the guarantor, which is more

MEMORANDUM OF DECISION - 11

indicative of a loan. Moreover, Trustee asserts filing a petition for relief constitutes HMH's transfer of all or substantially all of its assets, which does constitute an event of default, thereby entitling Kalamata to immediate full repayment of any unpaid amounts and securing Kalamata's right to repayment in the event HMH filed a bankruptcy petition.

### iv.     Other Factors

The *LG Funding* factors are not dispositive, and other factors may inform whether the transaction represents a genuine transfer of risk "or if the agreement is structured to ensure an absolute repayment obligation." *Reserve Funding Grp. LLC v. California Organic Fertilizers, Inc.*, 2024 WL 1604195, at *2 (E.D.N.Y. Apr. 12, 2024) (citing *Haymount Urgent Care PC v. GoFund Advance, LLC*, 609 F. Supp. 3d 237, 247 (S.D.N.Y. 2022)). For example, an agreement that allocates risk to the seller while affording the purchaser a "panoply of rights, remedies, and potential control is highly unusual in the context of an assets sale," and "[s]uch an overall arrangement is consistent with a debtor-creditor relationship, not a seller-buyer relationship." *Cap Call, LLC v. Foster (In re Shoot the Moon, LLC)*, 635 B.R. 797, 817 (Bankr. D. Mont. 2021).

In certain respects, the Agreement appears to allocate risk to Kalamata. It states Kalamata entered into the transaction "knowing the risks that [HMH's] business may slow down or fail," and all payments to Kalamata "shall be conditioned upon [HMH's] sale of products and services, and the payment therefore by [HMH's] customers." However, section 1.2 provides the Agreement "shall remain in full force and effect until the entire Purchased Amount and any other amounts due are received by [Kalamata],"

MEMORANDUM OF DECISION - 12

and the security agreement granted Kalamata a security interest in all of HMH's assets, beyond the accounts receivable, "if at any time there are insufficient funds in [HMH's] Account to cover Kalamata's entitlements under this Agreement." Additionally, Kalamata maintained extensive rights and remedies in the event of HMH's breach or default, including appointment as power of attorney, a security interest in all HMH's assets, the right to enter a confession judgment against HMH for the purchased amount, automatic assignment of HMH's business leases, and the right to immediately enforce its security interests and collect the sums due under the Agreement from HMH and/or the guarantor.

Trustee alleges the Agreement functioned as a loan because it provided Kalamata with recourse to sources beyond the receivables and as discussed above, HMH was in default upon execution and Kalamata knew of such default. Therefore, there was no true transfer of risk to Kalamata that HMH's business would slow down, fail, or HMH's customers would not pay.

Construing the Complaint in a light most favorable to Trustee and accepting all factual allegations as true, the Complaint adequately pleads that the Agreement may in actuality function as a loan, not a sale.

### b.   Availability of Affirmative Relief

Kalamata asserts that even if Trustee could prove the Agreement was a loan, Trustee cannot seek affirmative relief under New York's usury laws. "Under New York's usury statute, where the interest rate on a debt exceeds the criminal usury rate of 25% per annum, 'a corporation may interpose an affirmative defense of usury and, if

MEMORANDUM OF DECISION - 13

successful, obtain a declaration that invalidates the debt instrument ab initio.'" *Streamlined Consultants, Inc. v. EBF Holdings LLC*, 2022 WL 4368114, at *3 (S.D.N.Y. Sept. 20, 2022) (citing *Haymount Urgent Care PC v. GoFund Advance, LLC*, 609 F. Supp. 3d 237, 254 (S.D.N.Y. 2022)). However, this statute is limited to an affirmative defense, and corporations may not raise affirmative claims or counterclaims alleging criminal usury in order to invalidate an agreement. *Id.* See also *Intima-Eighteen, Inc. v. A.H. Schreiber Co., Inc.*, 568 N.Y.S.2d 802, 804 (N.Y. App. Div. 1991) ("The statutory exception for interest exceeding 25 percent per annum is strictly an affirmative defense to an action seeking repayment of a loan and may not, as attempted here, be employed as a means to effect recovery by the corporate borrower."); *Paycation Travel, Inc. v. Global Merch. Cash, Inc.*, 141 N.Y.S.3d 319, 320 (N.Y. App. Div. 2021) (exception for criminal usury is "only as a defense to an action to recover repayment of a loan, and not as the basis for a cause of action asserted by the corporation for affirmative relief").

Therefore, to the extent Trustee seeks to use the New York usury statute as a sword to void the Agreement or as a means to effect recovery, the Complaint fails to state a claim upon which relief may be granted and Count I will be dismissed without leave to amend. However, insofar as Trustee seeks a judicial determination that the Agreement is a usurious loan as it may concern Trustee's other claims, the Court will grant Trustee leave to amend the Complaint to clarify the relief sought.[2]

---

[2] Seeking to distinguish the present case at the hearing, Trustee noted he is standing in the shoes of a creditor, not those of the corporate borrower. To the extent it is relevant to the relief sought, the Court questions whether a creditor who is not party to the contract may claim the protections of New York's usury laws. *See Seidel v. 18 East 17th Street Owners, Inc.*, 586 N.Y.S.2d 240, 243 (N.Y. App. (Continued)

MEMORANDUM OF DECISION - 14

### 2. Count II: Transfer Avoidance

The Complaint seeks avoidance of the transfers to Kalamata under § 544(b) and Idaho law. Section 544(b) provides "the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim." Trustee seeks to avoid the transfer of the receivables under the Idaho Uniform Voidable Transfers Act ("UVTA"). In particular, Trustee cites Idaho Code sections 55-913 and 55-914.

"A prerequisite to both I.C. § 55-913 and § 55-914 is the presence of creditors who had antecedent debts at the time of the transfer." *Geile v. Wickersham (In re Gray)*, 2023 WL 4163465, at *2 (Bankr. D. Idaho June 23, 2023) (citing *Parkinson Seed Farm, Inc. v. Arlo Weeks & Brookside, LLC (In re Parkinson Seed Farm, Inc.)*, 640 B.R. 218, 250 (Bankr. D. Idaho 2022)). The Complaint alleges HMH had multiple unsecured creditors at the time the obligation was incurred and the transfers made, including the IRS, who "would have been able to pursue recovery of the transfers under relevant non-bankruptcy law." Additionally, the Complaint alleges that at all times, the assets of HMH, including the accounts receivable, were property of HMH and subject to valid security interests of other parties. While claims under these sections are normally subject to a four-year limitations period, Trustee contends the IRS is among the unsecured creditors who could have pursued recovery, and this Court has held that a trustee standing in the shoes of the IRS is not restricted by the state-law transfer limitations periods. *See*

---

Div. 1992) (collecting cases and observing "under certain circumstances, a stranger to the loan has no standing to claim that it was usurious").

MEMORANDUM OF DECISION - 15

*Hillen v. City of Many Trees, LLC (In re CVAH, Inc.)*, 570 B.R. 816, 835-36 (Bankr. D. Idaho 2017).

> Idaho Code section 55-914(1) provides:
>
>> A transfer made or obligation incurred by a debtor is voidable as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

And, under Idaho Code section 55-913(1),

> a transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation: (a) [w]ith actual intent to hinder, delay, or defraud any creditor of the debtor.

Idaho Code section 55-913(2) enumerates several factors to consider in determining whether a party acted with actual intent, including whether the "value of consideration received by the debtor was reasonably equivalent to the value of the asset transferred or amount of obligation incurred" and the "debtor was insolvent or became insolvent shortly after the transfer was made or the obligation as incurred."

Here, the Complaint alleges HMH incurred the obligation and made transfers to Kalamata in the amount of $158,400 without receiving fair consideration because the Agreement allegedly carried a usurious interest rate. Additionally, at the time the obligations were incurred and transfers made, "the present fair market value of [HMH's] assets were less than the amount required to pay its probable liability on its existing debts

MEMORANDUM OF DECISION - 16

as they became absolute and matured," i.e., HMH was insolvent "as that term is defined in 11 U.S.C. § 101(32) and applied in 11 U.S.C. §§ 547 and 548, as well as defined in Idaho Code § 55-911 and applied in 11 U.S.C. § 544."

Accepting all factual allegations as true, the Complaint states a claim for relief that the transaction is avoidable under state law and § 544(b).

### 3. Claim III: Disallowance of Claim Under § 502(d)

Finally, Trustee seeks claim disallowance under § 502(d). Section 502(d) provides: "Notwithstanding subsections (a) and (b) of this section, the court shall disallow any claim of any entity . . . that is a transferee of a transfer avoidable under section . . . 544 . . . of this title, unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under section 522(i), 542, 543, 550, or 553 of this title." Kalamata argues the claim should be dismissed as moot because the Agreement was not a loan, and, as such, Trustee cannot avoid the transfers, and Kalamata has no need to file a proof of claim. However, the Complaint adequately pleads the potential existence of a loan and avoidance. Accordingly, it remains possible Kalamata files a claim pursuant to Rule 3002. Therefore, Claim III is not moot.

**CONCLUSION**

For the reasons set forth above, the Court will grant Kalamata's motion to dismiss Count I to the extent it seeks to assert New York's usury statute as a sword, but it will grant Trustee leave to amend Count I to clarify the relief sought. The Court will deny

MEMORANDUM OF DECISION - 17

Kalamata's motion to dismiss with respect to Counts II and III. The Court will enter its own order.

DATED: January 21, 2026



_____
NOAH G. HILLEN
Chief U.S. Bankruptcy Judge

MEMORANDUM OF DECISION - 18